In re David A. CRABTREE a/k/a West Knoxville Investment Company, Inc., Debtor.

D. Broward CRAIG, Trustee, Plaintiff,

v.

The PUEBLO CORPORATION; Gary F. Long; the Federal Deposit Insurance Corporation; Gregory D. Shanks; Project Development Corporation; and Cain Partnership, Ltd., Defendants,

A. Benjamin Strand, Jr., Trustee for Blakley and Bradley Cameron Trust and Brougham Properties Inc. (Successors to Dandridge Investors, Inc.), a Tennessee Corporation; Michael M. Downing; and MMD, Inc., Intervenors.

Bankruptcy No. 3–83–01116.
Adv. No. 3–84–0324.

United States Bankruptcy Court,
E.D. Tennessee.

May 20, 1985.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, Jerome A. Madden, Washington, D.C., Walker & Walker, John A. Walker, Jr., Knoxville, Tenn., for plaintiff.

Waddey & Newport, Wm. Caldwell Hancock, Nashville, Tenn., James A.H. Bell, Knoxville, Tenn., for defendants Pueblo Corp. and Gary F. Long.

Morton, Lewis, King & Krieg, Mary M. Farmer, Knoxville, Tenn., for defendants Federal Deposit Ins. Corp. and Gregory D. Shanks.

A. Benjamin Strand, Jr., Dandridge, Tenn., for intervenor A. Benjamin Strand, Jr., Trustee.

Child, O'Connor & Petty, Charles H. Child, Knoxville, Tenn., for intervenors Michael M. Downing and MMD, Inc.

Ann C. Short, Knoxville, Tenn., for Witness Douglas Beaty.

CLIVE W. BARE, Bankruptcy Judge.

Asserting avoidability pursuant to 11 U.S.C.A. §§ 548 and 550 (1979 & Supp. 1985), the trustee seeks to recover from defendant Pueblo Corporation, a subsequent transferee, a limited partnership interest in Knox Resorts, Ltd., or the value thereof. Pueblo denies liability maintaining it took for value, in good faith, and without knowledge of the voidability of the initial transfer. 11 U.S.C.A. § 550(b)(1) (1979). Alternatively, Pueblo contends only the value of the limited partnership interest should be recovered under § 550(a) and that the interest was valueless at the time of transfer (to Pueblo).

I

Knox Resorts, Ltd. is a Tennessee limited partnership formed in December 1981 to acquire and manage a Howard Johnson's Motel in Knoxville, Tennessee. The original partners were Robert Windham, general partner, and limited partners Donald Cameron and Desh Investment Corporation, a Tennessee corporation owned by Douglas Beaty, Michael Downing, and debtor David Crabtree. The certificate of limited partnership, recorded on December 28, 1981, has been amended four times, reflecting changes in ownership interests as follows:

| Amendment Agreement Date | Recordation Date | General Partner | Limited Partners | |
|---|---|---|---|---|
| 2/1/82 | 3/23/82 | Robert Windham 25% | Douglas Beaty | 12.5% |
| | | | Donald Cameron | 12.5% |
| | | | David Crabtree | 37.5% |
| | | | Michael Downing | 12.5% |
| 4/21/83 | 6/30/83 | Pueblo Corp. 12.5% | Michael Downing | 12.5% |
| | | | Benjamin Strand, Jr. Trustee for Cameron Trust | 12.5% |
| | | | Theodore Erck, Trustee for David A. Crabtree Irrevocable Trust | 62.5% |

| Amendment Agreement Date | Recordation Date | General Partner | Limited Partners | |
|---|---|---|---|---|
| 7/8/83 | 7/8/83 | Pueblo Corp. 63.5% | Michael Downing | 12.5% |
| | | | Benjamin Strand, Jr. Trustee for Cameron Trust | 12.5% |
| | | | MMD, Inc. | 5.75% |
| | | | DRC, Inc. | 5.75% |
| 7/21/83 | 8/19/83 | Pueblo Corp. 62.5% | Michael Downing | 12.5% |
| | | | Benjamin Strand, Jr. Trustee for Cameron Trust | 12.5% |
| | | | MMD, Inc. | 6.25% |
| | | | Dandridge Investors, Inc. | 6.25% |

On March 29, 1983, debtor and Robert Windham entered into an agreement dissolving their joint ownership of various entities. Pursuant to this agreement, Windham agreed to transfer to debtor his entire partnership interest, twenty-five (25) percent, in Knox Resorts, Ltd. Thereafter, on May 25, 1983, Windham assigned his interest in Knox Resorts, Ltd., upon debtor's direction, to Theodore Erck, trustee of the David A. Crabtree Irrevocable Trust, an intervivos trust established June 24, 1981, for the benefit of debtor's minor son. Debtor agreed to indemnify Windham from any liability as general partner for the debts of Knox Resorts, Ltd.

Debtor also transferred his thirty-seven and one-half (37.5) percent interest in Knox Resorts, Ltd. to the David A. Crabtree Irrevocable Trust. Hence, on or before June 30, 1983, the Crabtree trust owned sixty-two and one-half (62.5) percent of Knox Resorts, Ltd. No consideration was paid to the debtor by the trust for either his transfer or the assignment, at debtor's direction, of Windham's twenty-five (25) percent interest.

At or about the time Windham assigned his interest in Knox Resorts, Ltd. to the Crabtree trust, Douglas Beaty, former attorney for the debtor, transferred his twelve and one-half (12.5) percent limited partnership interest to Pueblo, then wholly-owned by Beaty. Upon Windham's withdrawal, Pueblo became the general partner of Knox Resorts, Ltd.[1]

Under the terms of an agreement dated July 6, 1983, Beaty caused Pueblo to transfer a five and three-fourths (5.75) percent interest in Knox Resorts, Ltd. to both MMD, Inc. and DRC, Inc. in consideration of $50,000 paid to Pueblo. Concurrently, Beaty transferred all the outstanding stock in Pueblo to defendant Gary Long in exchange for $60,000. The assets of Pueblo acquired by Long included a one percent interest in Knox Resorts, Ltd. and the $50,000 paid by MMD, Inc. and DRC, Inc. for eleven and one-half (11.5) percent of Knox Resorts, Ltd.

An order for relief under chapter 7 was entered against the debtor on August 22, 1983. The trustee's original complaint, filed November 9, 1984, named only Pueblo as a defendant. On February 7, 1985, the trustee filed an amended complaint joining Gary Long, Federal Deposit Insurance Corporation (FDIC), and Gregory Shanks as defendants. The trustee asks the court to avoid the transfers to the Crabtree trust by debtor and Windham of, and transfer to the debtor's estate, their combined, former sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd. Alternatively, the trustee requests avoidance of the Crabtree trust's transfer to Pueblo of the sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.[2] Further, the trustee sought

---

1. Beaty testified that he did not want to be the general partner for Knox Resorts, Ltd.

2. Under the terms of a settlement agreement involving three other adversary proceedings in

injunctive relief prohibiting FDIC and Shanks, trustee under deeds of trust held by FDIC against the motel property, from conducting foreclosure proceedings, scheduled for February 11, 1985.[3] The court entered a preliminary injunction on February 11, 1985, enjoining the scheduled foreclosure.[4] Trial was held on March 25, 1985.[5]

## II

Section 548 of Title 11 of the United States Code enacts in relevant part:

*Fraudulent transfers and obligations*

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ... indebted....

11 U.S.C.A. § 548 (Supp.1985).

Pueblo concedes that the transfers to the Crabtree trust by the debtor and Windham are avoidable under § 548(a)(1), given the evidence adduced at trial. However, Pueblo, as a subsequent transferee, denies any liability to the trustee based on 11 U.S.C.A. § 550 (1979 & Supp.1985), which recites in part:

the debtor's case, with the exception of two insurance policies, all assets of the David A. Crabtree Irrevocable Trust are property of the estate.

3. The unpaid balance on the deed of trust notes held by FDIC was $5,488,000.23 through March 25, 1985.

4. The preliminary injunction directs Long to cause Pueblo to pay to FDIC all cash exceeding operating costs for application to promissory notes secured by deeds of trust against the partnership's interest in the motel property.

5. Motions to intervene and intervening complaints were filed prior to trial by the limited partners in Knox Resorts, Ltd. Defendants Pueblo and Long moved to dismiss the intervenors' complaints for failure to allege any basis

*Liability of transferee of avoided transfer*

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The *trustee may not recover under section (a)(2)* of this section *from*—

(1) *a transferee that takes for value,* including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.... (emphasis added)

The trustee contends Pueblo is an initial transferee of the fraudulent transfer because the Crabtree trust was in reality debtor's alter ego. The court has previously entered an order in debtor's case approving a settlement of claims recognizing that all assets of the trust with the exception of two insurance policies are property of the estate. Further, defendant Long did not negotiate with Erck, trustee of the Crabtree trust, for the transfer to Pueblo of the sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.[6] While admitting Crabtree directed Erck to effect a

for jurisdiction and lack of subject matter jurisdiction. Alternatively, defendants Pueblo and Long suggest abstention on the intervenors' complaints, contending the rights intervenors assert do not arise under the Bankruptcy Code nor in the case. As of the trial date the court had not ruled on the motion to dismiss intervenors' complaints.

6. See Exh. 24, Discovery Deposition of Gary Long (Oct. 24, 1984) at 35. Long was apparently approached with an offer by Beaty who proposed to sell Pueblo. According to Long, three days elapsed between the date he was contacted by Beaty and the execution of the July 6, 1983, agreement, whereunder Long acquired Pueblo from Beaty.

transfer to Pueblo of the Crabtree trust's interest in Knox Resorts, Ltd., Pueblo and Long contend proof to sustain the trustee's alter ego theory is wholly absent. Pueblo and Long further contend the alter ego theory is not necessarily applicable here simply because the assets of the Crabtree trust are property of the estate. It is not necessary for the court to resolve the question.

■ Assuming arguendo that Pueblo is not an "initial transferee," the transfer to it by the Crabtree trust is nonetheless avoidable because Pueblo did not give value for the sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.[7] Though Long paid $60,000[8] to Beaty for all the stock of Pueblo, no value was given by Pueblo for its acquisition of the sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.

Pueblo argues that the interest in Knox Resorts, Ltd. it acquired was valueless at the time of the transfer. Although the partnership debts may have totaled as much as $6,400,000 as of July 6, 1983, the record does not conclusively establish that a majority interest in Knox Resorts, Ltd. was valueless in July 1983. Knox Resorts, Ltd. purchased its interest in the Howard Johnson's Motel in late 1981 or early 1982 for approximately $5,500,000, or more.[9] Three different appraisals reflect a great disparity as to the value of the Knox Resorts, Ltd. interest in the motel property:

| Appraiser | Valuation Date | Estimated Value |
|---|---|---|
| G.T. Ballenger, Jr. | 3/22/85 | $4,150,000 |
| The Gates Companies, Inc. | 9/13/84 | $7,650,000 |
| Douglas Bailey | 6/12/84 | $7,453,220 |

Only Ballenger testified at the trial. He believes the value of the partnership's interest in the motel property was $4,600,000 as of July 1983.[10]

The Howard Johnson's Motel is strategically located on a major thoroughfare and in the vicinity of an interstate highway exit. The motel complex, the only asset of Knox Resorts, Ltd., is spread over 7.28 acres of extremely valuable property. Although Knox Resorts, Ltd. owns less than two acres of the site in fee simple, it has a long-term lease on the remainder. Going concern value is a significant factor. Without assigning a specific value to the motel property, and hence to Knox Resorts, Ltd. itself, the court finds the majority interest in Knox Resorts, Ltd. was not valueless in July 1983. Accordingly, the trustee is entitled to the return of the sixty-two and one-half (62.5) percent interest in the partnership or its value. 11 U.S.C.A. § 550(a) (1979 & Supp.1985).

### III

■ Pueblo insists it would be inequitable and unfair to require the return of the property transferred instead of payment of the value thereof. This insistence

7. Page 10 of Pueblo's post-trial brief recites in part: "[T]he proof compels the conclusion that their [Long and Pueblo] contribution of services, their commitment to a beneficial long-term management agreement at a substantially below market rate, together with their efforts and commitment to attempt to save the distressed partnership, constitutes more than adequate 'value' in exchange for the transfer made to Pueblo." The court disagrees. Perhaps these elements constitute value to Knox Resorts, Ltd. and its current partners; but, they do not represent value to either the debtor or the Crabtree trust in exchange for the sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.

8. The $60,000 paid to Beaty for Pueblo included $50,000 paid by DRC, Inc. and MMD, Inc. for eleven and one-half (11.5) of Pueblo's twelve and one-half (12.5) percent interest in Knox Resorts, Ltd. Hence, only $10,000 of Long's own funds were paid to Beaty.

9. Exh. 21, Deposition of David Crabtree at 6 (March 18, 1985). The purchase price may have been as much as $5,800,000.

10. Pueblo's objections to admissibility of the two other appraisals is overruled. These appraisals were prepared for Burk Wallace, a mortgage broker who assisted Long in an attempt to obtain long-term financing for Knox Resorts, Ltd. See Fed.R.Evid. 801(d)(2).

is based on the argument that Pueblo and Long have made a substantial investment in Knox Resorts, Ltd. Yet Pueblo asserts the revenues from the motel property are insufficient to pay operating expenses and service fixed debts and that a "foreclosure is essential to the financial rehabilitation of the motel property."[11] Further, Pueblo also asserts there currently is no marketable value for a sixty-two and one-half (62.5) percent interest in Knox Resorts, Ltd.

Fixing a value at the time of transfer of the Knox Resorts, Ltd. interest to Pueblo is an undertaking pregnant with potential for error. Returning the property interest transferred is a more appropriate, and certain, remedy under the circumstances. Pueblo's rights, if any, are safeguarded under § 550(d).[12]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

11. Reply Brief of Pueblo Corporation and Gary F. Long to Trustee's Supplemental Trial Brief at 8.

12. (1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

11 U.S.C.A. § 550(d) (1979 & Supp.1985).